**YALOBUSHA COUNTY v. CRAWFORD et al.**

No. 11977.

Circuit Court of Appeals, Fifth Circuit.

Dec. 31, 1947.

Rehearing Denied Jan. 21, 1948.

H. H. Creekmore, Rufus Creekmore and Wade H. Creekmore, all of Jackson, Miss., Cowles Horton, of Grenada, Miss., and W. I. Stone, of Coffeyville, Miss., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., Chester L. Summers, U. S. Atty., of Oxford, Miss., and Roger P. Marquis and Fred W. Smith, both of Washington, D. C., for appellees.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Fifty-nine thousand acres of land in Yalobusha County, Mississippi, including certain roads and highways belonging to the County, were within the area of two proposed reservoirs, known as the New Grenada Reservoir and the Enid Reservoir, which the Mississippi River Commission was preparing to construct by the erection of dams across the Yocona and the Yalobusha Rivers. The projects were designed to aid in controlling floods of the Mississippi River by impounding and holding back the flood waters of the Yocona and Yalobusha at critical times. The County sought by this suit a declaratory judgment wherein it would be adjudged that the defendant, as President of the Mississippi River Commission, and Arnold Smythe, as Manager of the two projects, had no lawful right or power under any law of the United States to construct the reservoirs, and that they had no power or authority to acquire, by condemnation or otherwise, the lands

within the boundaries of those reservoirs. In setting forth the nature of the controversy and the amount involved, the plaintiff alleged that the taking of the 59,000 acres within the County by the Government would cause a loss by the County of $20,000 annually by way of ad valorem taxes; would reduce the productivity of the Yalobusha County trade area; would cause the removal of approximately 650 families; would destroy 85 miles of public highway; would cause serious financial loss to the County in its governmental functions and to certain road districts and school districts within or partly within that area.

The complaint alleged that the defendants had acquired, and were acquiring, by purchase and condemnation proceedings, title to lands within the area, and were preparing to construct, and were diligently proceeding with plans for the construction of, the dams, although they were without power and authority to construct the dams or to acquire any land within the area because: (a) the cost of said project is in excess of any benefits to be derived therefrom and in excess of the limit of cost fixed by law; (b) it is the policy of the Government, as reflected in the relevant statutes, to undertake flood control only in cooperation with the local and state authorities, and that without such cooperation no work may be done and no money of the United States expended, and in connection with the projects involved there has been no cooperation between the Federal Government on the one hand and the local authorities on the other; (c) the condemnation of the land within the area will constitute taking of property without due process in that no public service is to be rendered by the construction of the reservoirs; (d) such construction will deprive the plaintiffs of annual revenues in a substantial amount without compensation therefor, and will constitute the taking of its property without due process of law; (e) no valid Act of Congress authorizes the condemnation or the taking of the lands within the area for the purposes intended.

The complaint prayed that a judgment be made declaring that the defendants were without power under any law to construct the reservoirs and without power or right under any law to acquire, by purchase or condemnation, any lands within the area for such purpose.

The defendants moved to dismiss the complaint on the grounds: (1) that the complaint failed to state a claim upon which relief could be granted; (2) that the plaintiff was without standing to sue; (3) that the Secretary of War and the Chief of Engineers of the United States Army were necessary and indispensable parties defendant; (4) that the United States, an indispensable party defendant, is a sovereign not amenable to suit.

■ We think this case is settled in practically all of its aspects by Oklahoma v. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487.[1] Whether or not the cost of the project is in excess of the benefits to be derived therefrom is a matter for the determination of the Congress and not for the courts, as is the question of whether or not the money set up by Congress for the construction of the project is inadequate. We do not think that the County can be permitted to take issue with Congress on the question of whether or not the public will be served by the construction of the reservoir. The wisdom of the undertaking is not the Court's responsibility.

[1] In Oklahoma v. Atkinson Co., 313 U. S. 508, 61 S.Ct. 1050, 1063, 85 L.Ed. 1487, the Supreme Court said: "Since the construction of this dam and reservoir is a valid exercise by Congress of its commerce power, there is no interference with the sovereignty of the state. United States v. Appalachian Power Co., supra, 311 U.S. page 428, 61 S.Ct. page 309, 85 L.Ed. 243. The fact that land is owned by a state is no barrier to its condemnation by the United States. Wayne County v. United States, 53 Ct.Cl. 417, affirmed 252 U.S. 574, 40 S.Ct. 394, 64 L.Ed. 723. There is no complaint that any property owner will not receive just compensation for the land taken. The possible adverse effect on the tax revenues of Oklahoma as a result of the exercise by the federal government of its power of eminent domain is no barrier to the exercise of that power. 'Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield.' Florida v. Mellon, 273 U.S. 12, 17, 47 S.Ct. 265, 266, 71 L.Ed. 511."

The fact that the State does not cooperate, or that the United States does not insist upon, or waives, such cooperation, does not confer upon appellant the right to maintain this action.

The arguments presented here would be highly appropriate to Congress or its committees, or to the agencies upon which Congress has cast the responsibility of carrying out its will, but there is no showing here that any property will be taken without just compensation, or that the United States has acted beyond the scope of its delegated powers.

Having concluded that the lower Court was correct in holding that the complaint failed to state a claim upon which relief could be granted, it is unnecessary for us to pass upon the question of whether or not the Secretary of War and Chief of Engineers of the United States Army and the United States were indispensable parties. However, it will be of interest to note the case of Williams v. Fanning, 68 S.Ct. 188.

The judgment of the Court below is correct and it is, therefore, affirmed.