**BELCHER OIL CO., Inc. v. NATIONAL ENFORCEMENT COMMISSION et al.**

Civ. No. 4617.

United States District Court
N. D. Georgia, Atlanta Division.

July 3, 1953.

Fisher & Phillips, Atlanta, Ga., for plaintiff.

James W. Dorsey, U. S. Atty., Atlanta, Ga., Allan E. Shapiro, Washington, D. C., for defendants.

SLOAN, District Judge.

Belcher Oil Company, Inc., filed in this Court a complaint seeking to enjoin the National Enforcement Commission and John A. Griffin, its enforcement commissioner, from further hearing and from making any finding on a complaint issued by the National Enforcement Commission against Belcher Oil Company, Inc.

It appears from the verified complaint that:

On April 30, 1953 a complaint issued from the Wage Stabilization Board, Region V, charging Belcher Oil Company, Inc., a Florida corporation, with its principal office in Miami, Florida, with a violation of Section 405(b) of Title IV of the Defense Production Act of 1950, as amended, 64 Stat. 803, Title 50 U.S.C.A. Appendix, § 2101 et seq.

The National Enforcement Commission, Wage Stabilization Board, designated John A. Griffin, who resides within the Northern District of Georgia, as enforcement commissioner.

The hearing was begun on May 12, 1953 in Miami, Florida before said enforcement commissioner and continued to Atlanta, Georgia and there resumed on May 22, 1953.

At the hearing in Miami, Florida, the only evidence introduced was a narrative report of a government investigator concerning the wage policies of the Belcher Oil Company, Inc., from November, 1950, to July, 1951.

This report contained hearsay, opinions and conclusions of the investigator and was received in evidence over the proper and timely objections of counsel for Belcher Oil Company, Inc.

The Belcher Oil Company, Inc., contends:

1. That since the above report was the sole evidence introduced by the government that there is no case pending before the enforcement commissioner upon which he can validly rule.

2. That the Defense Production Act of 1950, as amended, did not vest in the President of the United States, or any official, board, commissioner or agency of the Executive Branch the power to determine whether wage adjustments as defined in said Act were made in violation of the Act or regulations promulgated thereunder, and that the purported delegation of such authority to the National Enforcement Commission was and is invalid.

3. That the National Enforcement Commission has never had jurisdiction and authority to process a complaint against petitioner for alleged violation of wage control regulations.

4. That even if the National Enforcement Commission ever did have such authority, that such authority expired on April 30, 1953 when the statutory authority for controls expired.

5. That any enforcement power rests with the Federal District Court in actions brought by the Attorney General of the United States.

6. That further hearing would be null and void.

7. That any finding by the enforcement commissioner so far as Belcher Oil Company, Inc., is concerned would be illegal because no competent evidence has been introduced by the government.

8. That in these exceptional circumstances, injunction is required to prevent substantial and unnecessary expense to plaintiff because of such invalid administrative procedure and irreparable injury to plaintiff because an unnecessary, serious impairment of the plaintiff's operation by the defense of the complaint in said administrative proceedings. Injunction is prayed.

The service of the complaint is evidenced by the following entry of the United States Marshal:

"I hereby certify and return that on the 19th day of June 1953 I received the within summons and complaint and on June 19th 1953 I served a true and correct copy on National Enforcement Comm. Hon. John A. Griffin Hearing Commissioner by leaving a copy with John A. Griffin personally at 1252 Uper Gate Dr. Atlanta, Ga. Also on June 22, 1953 I served a true copy on United States by leaving a true copy with James W. Dorsey, Dist. Atty. personally at Old Post. Bldg. Atlanta, Ga. Joe B. Harrison United States Marshal by Lucious G. McElwaney Deputy United States Marshal."

John A. Griffin, denominating himself "National Enforcement Commission Enforcement Commissioner," filed a motion to dismiss the complaint upon six grounds, as follows:

1. The National Enforcement Commission is not a suable entity.

2. The Court lacks jurisdiction over the members of the National Enforcement Commission, who are indispensable parties to this action.

3. The plaintiff has failed to exhaust his administrative remedies.

4. The plaintiff will not suffer irreparable injury if the enforcement commissioner renders his decision because the decision will not cause plaintiff immediate injury and because adequate remedies exist at law.

5. The National Enforcement Commission is lawfully constituted.

6. The authority of the National Enforcement Commission did not expire on April 30, 1953.

A rule nisi was issued requiring the defendants to show cause before the Court on June 30, 1953 why the prayers of the complaint should not be granted. No response was filed by the defendants named in the complaint except the aforementioned motion to dismiss. Oral argument on the motion to dismiss was had and briefs of both parties submitted to the Court, the motion to dismiss being taken under advisement. The Court inquired if complainant desired to introduce evidence on the issues raised by the complaint, whereupon counsel for complainant stated that the complaint was verified and they did not desire to submit further evidence. Thus the matter is now before the Court for determination.

█ The defendants by their motion to dismiss challenge the venue and jurisdiction of the District Court, first, upon the ground that the National Enforcement Commission is not a suable entity and, second, that the Court lacks jurisdiction over the members of the National Enforcement Commission who defendants claim are indispensable parties to this action. There is little doubt that the commission cannot be sued eo nomine since Congress has not constituted the commission a body corporate or authorized it to be sued eo nomine. When Congress authorizes one of its agencies to be sued eo nomine, it does so in explicit language or impliedly because the agency is the offspring of such a suable entity. Blackmar v. Guerre, 342 U.S. 512,

72 S.Ct. 410, 96 L.Ed. 534. However, complainant, having by amendment eliminated the National Enforcement Commission as party defendants, that question need not be determined here.

■■ The defendant, in the motion to dismiss, contends that the members of the commission are indispensable parties to the action. The Supreme Court of the United States in the case of Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, lays down the following rule:

"The superior officer is an indispensable party if a decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him.

"The superior officer is not an indispensable party if the decree which is entered would effectively grant the relief desired by expending itself on the subordinate official who is before the court."

While the complaint in this case originally prayed that a temporary restraining order issue restraining the National Enforcement Commission from further action in its complaint against the plaintiff, the plaintiff having by amendment eliminated the National Enforcement Commission, it now seeks only to restrain John A. Griffin, the enforcement commissioner, from making any finding and from further processing the claim and from making rulings in the case against the plaintiff, and that the enforcement commissioner, John A. Griffin, be enjoined from further ruling in the case against the plaintiff presently pending before said enforcement commissioner, and for other relief.

In the case of Williams v. Fanning, supra, the Postmaster General, in Washington, D. C., had found that petitioner's weight reducing enterprise was fraudulent and he issued a fraud order directing the respondent postmaster at Los Angeles, California to refuse payment of any money orders drawn to the order of the petitioner therein and to stamp as fraudulent all mail matter directed to petitioner and to return it to the senders. The petitioner brought suit in the District Court in the Southern District of California to enjoin the postmaster from carrying out the order, claiming that they would be deprived of the hearing to which they were entitled and that the fraud order was without support of substantial evidence. On motion of the respondent the District Court dismissed the complaint, holding that the Postmaster General was an indispensable party. The United States Supreme Court reversed, holding that the Postmaster General was not an indispensable party and that the relief sought against the postmaster alone would amount to granting all the relief sought, and that the decree in order to be effective need not require the Postmaster General to do a single thing,—that he need not be required to take any action either directly or indirectly through his subordinates—that no concurrence on his part was necessary to make lawful the payment of money orders and the release of the mail unstamped, yet that was all the Court was asked to command.

Applying to the case at bar the reasoning of the Supreme Court in the above case, an injunction against John A. Griffin, enforcement commissioner, restraining him from proceeding with the hearing and from making any finding therein, would effectively grant all of the relief which the plaintiff seeks without requiring any affirmative action, directly or indirectly, by the National Enforcement Commission. This Court therefore reaches the conclusion that the National Enforcement Commission is not an indispensable party to said complaint.

■ The other grounds of the motion are:

(3). That the plaintiff has failed to exhaust its administrative remedies.

While it is not pointed out in the brief what administrative remedy complainant has, under the circumstances of this case and the rulings here made, complainant would not be required to exhaust administrative remedies, if such remedies exist.

Any expense incurred in defending the complaint before the enforcement commis-

sioner,—expense of attorney's fees for the filing of briefs and argument would, under the circumstances of this case, cause irreparable injury to complainant, and in view of the holdings hereinafter made, it is unnecessary for the Court to at this time determine whether the National Enforcement Commission is lawfully constituted, or whether its authority expired or terminated on April 30, 1953. The motion to dismiss is, as to the defendant, John A. Griffin, Enforcement Commissioner, therefore overruled and denied.

It is contended by counsel for John A. Griffin, National Enforcement Commissioner, that the powers of the commission are derived from the Defense Production Act of 1950, as amended, 64 Stat. 798, 50 U.S.C.A.Appendix, § 2061 et seq. An examination of that Act discloses that only Title IV is involved here, Section 405(b) thereof providing that the President was permitted to " * * * prescribe the extent to which" wage payments in contravention of the Act or wage stabilization or orders " * * * shall be disregarded by the executive departments and governmental agencies". By Executive Order 10161, Sec. 401, 15 F.R. 6105, 50 U.S.C.A.Appendix, § 2071 note, the President created the Economic Stabilization Agency to administer wage and price controls, providing that the head of the agency should be the Economic Stabilization Administrator, and delegated to the Administrator all the functions conferred upon the President by said Act, this order being dated September 9, 1950.

Effective April 15, 1952, General Order 15, 17 F.R. 2994, was issued conferring upon the Wage Stabilization Board authority to determine whether any wage, salary or other compensation has been paid or accrued in contravention of any regulation or order, providing that in case of violation the entire amount of the annual wage should be disallowed regardless of what portion thereof actually exceeded the maximum permissible wage unless extenuating or mitigating circumstances existed, in which case a lesser amount, not less than the excess payment, should be disallowed, as the usual and general policy. Such determination would be final, conclusive, binding on other departments and agencies, and not subject to judicial review.

By the Act of June 30, 1952, 50 U.S.C.A. Appendix, § 2103, Congress amended Section 403 of the Act, abolishing the old board and providing for the appointment of a new board, and expressly conferred upon the new board, subject to the supervision and control of the administrator, the power to initiate wage stabilization policies and regulations.

On July 30, 1952, Economic Stabilization Order No. 18, 17 F.R. 6925, and the amendment to ESA General Order No. 15, November 6, 1952, 17 F.R. 9977 were issued, vesting enforcement powers in the National Enforcement Commission.

It seems that under the guise of authority granted to the President to "prescribe the extent to which" wage payments made in violation of a regulation or order shall be disregarded by the Executive Department, that the agency has undertaken to assume the authority to administratively determine violations of the Act, to fix the extent of such violations, to determine that the entire amount of the annual wage should be disallowed, unless extenuating or mitigating circumstances exist, and in such case to fix a lesser amount not less than the excess payment, and to make such administrative determination final, conclusive and binding upon other departments and agencies. This is true notwithstanding the express provision of Section 706(b) of the Act, 50 U.S.C.A.Appendix, § 2156(b) which provides:

"The district court of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this Act or any rule, regulation, order, or subpena thereunder, and of all civil actions under this Act to enforce any liability or duty created by, or to enjoin any violation of, this Act or any

382

rule, regulation, order, or subpena thereunder."

This Court is presently of the opinion that the Act did not authorize the President to determine whether such wage adjustments were made in violation of the Act or the regulations promulgated thereunder, but confined the power of the President to prescribe the extent to which compensation payments in contravention of the regulation should be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of the employer for the purposes of any other law or regulation.

Consequently, the delegation of this authority by the President to the head of the agency, the Economic Stabilization Administrator, did not confer upon that official powers that the President did not have.

The National Enforcement Commission had no power or authority to determine administratively that a violation had occurred, or the extent of such violation.

The Court therefore is presently of the opinion that the issuing of subpoenas, the holding of hearings, the receiving of evidence, and the making of findings by the National Enforcement Commission as to the fact of violations, or the extent thereof, are wholly illegal and without authority of law.

While no response has been filed by John A. Griffin, Enforcement Commissioner, the Court is of the opinion that the complainant is entitled to the pendente lite temporary injunctive relief sought as against the defendant, John A. Griffin, Enforcement Commissioner, and it is therefore

Considered, Ordered and Adjudged that the defendant, John A. Griffin, as Enforcement Commissioner of the National Enforcement Commission is, until the further order of this Court, hereby Restrained and Enjoined from further action in the complaint of the National Enforcement Commission against Belcher Oil Company, Inc., and is Restrained and Enjoined from making any finding in said hearing, or from further processing said claim, and from making any ruling in said proceeding.