235 F.2d 787
 J. A. LESTER, Jack Eaton, John A. Rylander, Joseph E. Stika,
J. E. Hennewyk, L. E. Carlson, Appellants,
v.
Lawrence E. PARKER, Peter Mendelsohn, Fred H. Kulper, Claude
Paney, Theodore W. Rolfs, Harold Fontaine, Appellees.
 No. 14081.
 United States Court of Appeals Ninth Circuit.
 Aug. 27, 1956.
Rehearing Denied Oct. 1, 1956.
 
 Warren E. Burger, Asst. Atty. Gen., Donald B. MacGuineas, Paul A. Sweeney, Attys., Dept. of Justice, Washington, D.C., Lloyd H. Burke, U.S. Atty., Cal., Brobeck, Phleger & Harrison, San Francisco, for appellants.
 Gladstein, Andersen, Leonard & Sibbett, Richard Gladstein, Norman Leonard, San Francisco, Cal., for appellees.
 Before HEALY, McALLISTER and POPE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Following the issuance of our mandate in Parker v. Lester, 9 Cir.,227 F.2d 708, 717, the district court, on motion of the plaintiffs, entered its decree for the purpose of carrying out our judgment as directed. Claiming that the decree thus entered is not in accordance with the opinion and mandate of this court, and also that it is beyond the trial court's jurisdiction, the defendants have brought this appeal.
 
 
 2
 We are of the opinion that the decree is in conformity with our decision and it is not subject to the objections now presented by Government counsel on behalf of the appellants. What our decision vindicated was the right of the plaintiffs to seek and obtain private employment in one of the common walks of life; that this was a right 'entitled to constitutional protection', and to 'protection at the hands of a court of equity.' Holding that these plaintiffs 'have no adequate or any remedy at law'; that the damages of which they complain through being deprived of employment as seamen upon merchant vessels, are irreparable; that the 'Plaintiffs were able to show and did show that the defendants through the application of the alleged void and unconstitutional regulations had deprived them of employment and were threatening further to deprive them of future work as merchant seamen', we found plaintiffs entitled to a declaration of those rights and directed that the court enter an injunction accordingly.
 
 
 3
 The decree now entered is precisely to that effect. It enjoins the defendants from interfering with the employment of these plaintiffs, and from declining or refusing to take steps to advise shipping companies and unions that these seamen are entitled to employment.
 
 
 4
 After plaintiffs had moved for the entry of a decree following the mandate, the Commandant promulgated some amended regulations, dated April 26 and effective May 1, 1956, and defendants argued in the court below, as they do here, that these plaintiffs cannot be allowed to work until they have been screened and found acceptable under the new regulations. The only difference between the plaintiffs and those they represent on the one hand, and all the seamen who are currently employed and working on the other, is that former have been screened off, and denied employment, under the procedures which our decision found to be void and of no effect. For the defendants now to insist that plaintiffs remain in this status, thus improperly fastened upon them, emphasizes the need for the injunction now issued. Defendants are but trying to give effect to the old regulations by which they denied these men employment by thus undertaking to keep them suspended until defendants get around to hearings under the new regulations. The decree properly prohibits that. The court correctly held that wanting a hearing which measures up to due process, the plaintiffs' constitutionally protected right to work remains wholly unimpaired.
 
 
 5
 The decree does not fail to give due place to the new regulations. It contains the proviso:
 
 
 6
 'Provided, however, that the provisions of this decree shall be without prejudice to, and shall not effect or enjoin the taking of any action by respondents pursuant to regulations of the Coast Guard promulgated on April 25, 1956, and now in effect; provided further, however, that pending any valid hearing held pursuant to the said regulations or other regulations no merchant seaman shall be suspended from employment or have his employment or prospective employment interfered with, nor shall any Merchant Mariner's Document issued pursuant to the provisions of this decree be suspended or revoked prior to such hearing.' This gives adequate deference to the new regulations. The question of their sufficiency to meet the requirements of due process does not arise upon this appeal.
 
 
 7
 In addition to enjoining interferences with the employment of the plaintiffs, the decree directs the defendants to issue to these seamen documents showing they may be employed.[1] This, say appellants, grants relief in the nature of mandamus which is beyond the jurisdiction of the district court. Furthermore, they say, this calls for a validation of documents for emergency service which only the Commandant may grant, and that such relief cannot be ordered in the absence of the Commandant as an indispensable party defendant.
 
 
 8
 The court here has done no more than to follow the recognized power of courts of equity in issuing injunctions, to make those injunctions effective by ancillary provisions, in aid of the injunction, which may require the defendant to do something.[2] Thus in American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 110, 23 S.Ct. 33, 39, 47 L.Ed. 90, the injunction ordered was one 'to prohibit the further withholding of the mail from complainants'. Here the court has issued its injunction to prohibit the further withholding of completed documents from the plaintiffs.
 
 
 9
 The case, after all, was one instituted and still pending in the court below, which in issuing the injunction, had the inherent power possessed by any court of equity to make that injunction effective, and to prevent the frustration thereof. Observing, as it did, that an endorsement on the seaman's documents would be essential to protection of their right to work, and knowing, as is conceded, that the stamping of the documents for emergency service is done at San Francisco, and by these defendants, the court properly added this safeguard.[3] In Williams v. Fanning, 332 U.S. 490, 494, 68 S.Ct. 188, 92 L.Ed. 95, the court upheld the right of the plaintiffs to a decree that the local postmaster desist from refusing to pay money orders and to desist from refusing to deliver their mail to the plaintiffs.[4] This was a recognition of the power of the court to require payment of the money orders and the forwarding of the mail.[5]
 
 
 10
 The rationale supporting the power of a court of equity to frame its injunctive decrees in such manner as to prevent their frustration is also the foundation for the rule that in cases of the kind now before us the courts have power to protect individual rights against unlawful and unauthorized administrative power. The power and duty to protect such rights is fundamental; it springs from the very 'existence of courts', Stark v. Wickard, 321 U.S. 288, 308, 64 S.Ct. 559, 570, 88 L.Ed. 733,[6] and that is particularly true, where the right, as here, is a constitutional one.[7] It is unthinkable that the court below was without power fully and effectively to protect the rights which our decision said belonged to these plaintiffs.
 
 
 11
 The judgment is affirmed.
 
 
 12
 HEALY, Circuit Judge, dissents.
 
 
 
 [1]
 'It Is Further Ordered, Adjudged And Decreed that the respondents, or their successors, and all persons acting for and on their behalf, are hereby directed forthwith to issue to each petitioner and to all merchant seamen who are members of the class represented herein by petitioners, a Merchant Mariner's Document bearing a special validation endorsement for emergency service, or its equivalent, by whatever name or title it may be called, indicating, showing and establishing that such merchant seaman may be employed on any merchant vessel of the United States; the said document may, in the discretion of the respondents, contain in addition to the words 'validated' or 'validated for emergency service', the following words:
 "issued pursuant to decree of United States District Court for the Northern District of California, July 12, 1956, and to be given the same effect as all similar documents issued without such order."
 
 
 [2]
 This traditional power of equity, in an injunction action, to issue an ancillary order requiring affirmative action, is discussed at some length in Vaughan v. John C. Winston Co., 10 Cir., 83 F.2d 370, 374, and in Bowles v. Skaggs, 6 Cir., 151 F.2d 817, 829. The Supreme Court has impliedly approved the latter case by reversing a decision in conflict with it. This was in Porter v. Warner Holding Co., 328 U.S. 395, at page 399, 66 S.Ct. 1086, at page 1090, 90 L.Ed. 1332, where the court said: 'But where, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law.'
 
 
 [3]
 Appellants misconstrue the decree's direction for endorsement on the Mariner's Document. It requires no certification that the seaman has been cleared after hearing. It means no more than that it shall be stated that the seaman may work pursuant to decree of the court. The stamping of such documents has always been done by the local Coast Guard officials
 
 
 [4]
 332 U.S. at page 494, 68 S.Ct. at page 189: 'It is he who refuses to pay money orders, who places the stamp 'fraudulent' on the mail, who returns the mail to the senders. If he desists in those acts, the matter is at an end. That is all the relief which petitioners seek.'
 
 
 [5]
 As pointed out in Vaughan v. John C. Winston Co., supra, there is no difference in substance between a double negative and a positive. 'Desist from refusing to pay money orders' in substance means 'pay money orders'
 
 
 [6]
 'But under Article III (Constitution) Congress established courts to adjudicate cases and controversies as to claims of infringement of individual rights whether by unlawful action of private persons or by the exertion of unauthorized administrative power.' 321 U.S. at page 310, 64 S.Ct. at page 571
 
 
 [7]
 'There is a constitutional right to a judicial hearing on some issues, whether by habeas corpus or by some other method of review. If there were not, then the liberties of a citizen could be made dependent on the whim or caprice of the executive branch.' William O. Douglas, 'We, The Judges', (1956), p. 176
 'It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved.' United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211. Cf. Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (text preceding footnotes 4 and 6).