# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3102

_____

Ron Fitzgerald, on his own behalf and    *
as next friend of S.F., a minor child;    *
Joann Fitzgerald, on her own behalf    *
and as next friend of S.F., a minor    *
child; S.F., a minor child,    *
   *
       Appellants,    *
   *    Appeal from the United States
     v.    *    District Court for the Western
   *    District of Missouri.
Camdenton R-III School District;    *
Ronald Hendricks, in his official    *
capacity as Superintendent of the    *
Camdenton R-III School District;    *
Missouri Department of Education;    *
D. Kent King, in his official capacity    *
as Commissioner of Education for the    *
Missouri Department of Education,    *
   *
       Appellees.    *

_____

Submitted: October 10, 2005
Filed: March 1, 2006

_____

Before LOKEN, Chief Judge, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Ron and Joann Fitzgerald are the parents of S.F., who was born in 1992 and later enrolled for several years in the Camdenton R-III School District, where he still resides. Although S.F. did not receive special education services there, the District claims that his behavior and academic performance indicated he might have a disability. The District decided to evaluate him under the Individuals with Disabilities Education Act ("IDEA"). The Fitzgeralds refused to consent to an evaluation, withdrawing S.F. from public school to educate him at home. The Fitzgeralds have had S.F. evaluated privately and provided special education services to him through private sources.[1] The Fitzgeralds have expressly waived all benefits under the IDEA.

The District initiated a due process hearing under the "child find" provisions of the IDEA. A three-member panel—administered by the Missouri Department of Elementary and Secondary Education[2]—ruled for the District, authorizing an evaluation of S.F. "as soon as is practical."

The Fitzgeralds then sued in district court, appealing the panel's decision and seeking declaratory and injunctive relief. On review, the district court granted summary judgment to the defendants, holding that the District could evaluate S.F. The Fitzgeralds object that the court misinterprets the IDEA, and alternatively that it

---

[1]In this case, there is no allegation of abuse or neglect, that the parents do not represent the best interests of the child, or that any state court proceedings are pending.

[2]Because the Department and its Commissioner only facilitate the hearing, have never taken a position on the issues in this case, and are not indispensable to granting relief, the district court correctly dismissed them as parties. *See* Mo. Rev. Stat. § 162.961.3 (specifying state board's procedural responsibilities in facilitating the due process hearing); *see also* **Terminal Freight Handling Co. v. Solien**, 444 F.2d 699, 705 (8th Cir. 1971), *citing* **Williams v. Fanning**, 332 U.S. 490, 493 (1947).

is unconstitutional.  Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

This court reviews de novo a grant of summary judgment, applying the same standard as the district court.  *See **Essco Geometric v. Harvard Indus.***, 46 F.3d 718, 729 (8th Cir. 1995).  The parties agree that there is no genuine issue of material fact.  Therefore, this court decides whether judgment is appropriate as a matter of law.  *See **id.***, *citing* **Fed. R. Civ. P. 56(c)**.  This court reviews de novo the district court's interpretation of statutes.  *See **Haug v. Bank of Am.***, 317 F.3d 832, 835 (8th Cir. 2003).

Congress enacted the IDEA for the purpose of making available a "free appropriate public education" ("FAPE") to all children with disabilities.  20 U.S.C. § 1400(d)(1)(A).  The IDEA authorizes federal funds for states that enact policies and procedures that meet certain conditions, including the "child-find" provision:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3)(A).  *See also* 20 U.S.C. § 1412(a)(10)(A)(ii)(I) (child-find applies to children in private schools).  The implementing regulations require that each public school district shall locate, identify, and evaluate all private school children with disabilities.  *See* 34 C.F.R § 300.451(a); 34 C.F.R. § 300.125(a)(1)(i).  By the

terms of Missouri's State Plan for Special Education, home-schooled students are considered students in private schools.

It is undisputed that the IDEA does not require school districts to provide services to all children with disabilities. *See **Foley v. Special Sch. Dist. of St. Louis County***, 153 F.3d 863, 865 (8th Cir. 1998) (private school student has "no individual right under IDEA to . . . special education and related services"), *interpreting* 20 U.S.C. § 1412(a)(10)(C)(i) and 34 C.F.R. § 300.454(a). Rather, the IDEA allows parents to decline services and waive all benefits under the IDEA. *See* 20 U.S.C. § 1414(a)(1)(D)(ii)(II). When parents waive their child's right to services, school districts may not override their wishes. *See **id.***

Despite the parental veto over IDEA services, the District argues that it may pursue an initial evaluation in this case, invoking a specific IDEA provision:

> If the parent of such child does not provide consent for an initial evaluation . . . or the parent fails to respond to a request to provide the consent, the local educational agency [*e.g.*, the District] may pursue the initial evaluation of the child by utilizing the [due process hearing] procedures described in section 1415 of this title, except to the extent inconsistent with State law relating to such parental consent.

20 U.S.C. § 1414(a)(1)(D)(ii)(I); *see also* 34 CFR § 300.505(b). The District implies that the word "may" gives it unfettered discretion to pursue an initial evaluation, even where the parents refuse consent, privately educate the child, and expressly waive all IDEA benefits.[3]

---

[3]The United States, as amicus, says that the District must have "a legitimate reason" in order to pursue a hearing (which the United States says does not exist in this case). The United States cites no authority for this position. The District counters

-4-

However, the IDEA's use of the word "may" does not end the inquiry. This court has held in a special-education case that the word "may" does not give an agency absolute discretion if it is inconsistent with the overall purposes of the statute. *See John T. v. Marion Indep. Sch. Dist.*, 173 F.3d 684, 688-689 (8th Cir. 1999). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Thus, in determining whether Congress intended to give the District unfettered discretion to pursue an evaluation in this case, this court reads the IDEA as a whole.

The purpose of the child-find evaluation is to provide access to special education. Section 1414(a)(1)(A) provides that the school district "shall conduct a full and individual initial evaluation . . . *before the initial provision of special education and related services* to a child with a disability under this part." (emphasis added). Other provisions of the IDEA also make clear that the goal of the evaluation is to determine the educational needs of the child. *See* 20 U.S.C. § 1414(a)(1)(C)(i)(II) (evaluation procedures must be designed "to determine the educational needs of such child."); 20 U.S.C. § 1414(c)(1)(B) (evaluation data used to determine the educational needs of the child.) The comments to the regulations reflect this goal: "Child find . . . is an ongoing activity that [school districts] should be engaged in throughout the year for all children in order to meet the statutory obligations to ensure that all children in the State are located, identified and evaluated *and that all children have the right to FAPE*." 64 Fed. Reg. 48,12603 (1999). This reflects the IDEA's overall purpose "to ensure that all children with disabilities have available to them a free appropriate education." 20 U.S.C. § 1400(d)(1)(A). *See Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 73 (1999).

---

that it must pursue the hearing in order to determine the amount of money it receives for parentally-placed children with disabilities, citing 64 Fed. Reg. 48,12603 (March 12, 1999). The District thus believes that it always has a reason to force an evaluation.

Finally, the IDEA's requirements for gathering information during an evaluation and using the evaluation's results are pointless when parents refuse consent, privately educate the child, and expressly waive all benefits under the IDEA. Section 1414(b)(2) states that, in conducting the evaluation, the [District] shall gather information "that may assist in determining . . . the content of the child's individualized education program, including information related to enabling the child to be involved in and progress in the general education curriculum." The regulations provide that each school district shall ensure "[t]he results of the evaluation are used by the child's [Individualized Educational Program] team in meeting the [IEP] requirements." 34 C.F.R. § 300.320(b)(2). These requirements do not make sense for privately-educated children whose services have been waived.

Congress intends that a district may not force an evaluation under the circumstances in this case. Where a home-schooled child's parents refuse consent, privately educate the child, and expressly waive all benefits under the IDEA, an evaluation would have no purpose.

The district court's judgment is reversed, and the case remanded.

_____